FRANKLIN B. HOWLAND, CHARLES D. WALKER CO., ET AL. *v.* UNITED
STATES   (No. 5198)*

United States Court of Customs and Patent Appeals, May 19, 1966

*Glad & Tuttle* (*Edward N. Glad, George R. Tuttle,* of counsel) for appellants.
*John W. Douglas,* Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, *Sheila N. Ziff,* for the United States.
*Lamb & Lerch* (*David A. Golden, of counsel*) amici curiae.

[Oral argument April 7, 1966 by Mr. Glad and Mrs. Ziff]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND,
Associate Judges

ALMOND, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division,[1] sustaining the collector's classification of certain wooden shutters with movable louvers, varying in width from 6 to 12 inches and in length up to but not including 80 inches, as window blinds under the provisions of paragraph 411 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, and the assessment of duty thereunder at 40 per centum ad valorem. It is appellants' contention that the merchandise is properly dutiable at

---

*C.A.D. 878.
[1] 53 Cust. Ct. 205, C.D. 2497.

16⅔ per centum ad valorem under the provision of paragraph 412 of said act, as modified by the Annecy Protocol, T.D. 52373, for manufactures of wood not specially provided for.

Paragraph 411, as modified by T.D. 53865 and T.D. 53877, provides in pertinent part:

Porch and window blinds, baskets, bags, chair seats, curtains, shades or screens, any of the foregoing wholly or in chief value of bamboo, wood, straw, papier-mache, palm leaf, or compositions of wood, not specially provided for:

\*          \*          \*          \*          \*          \*          \*

Other (except baskets and bags) _____ 40% ad val.

Paragraph 412, as modified by T.D. 52373 and T.D. 52476, provides in pertinent part:

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

\*          \*          \*          \*          \*          \*          \*

Other (except \* \* \*) _____ 16⅔% ad val.

It should be noted for clarification that the case of *Frazer & Hansen, H.B. Thomas & Co.* v. *United States* [2] was incorporated in the case at bar. That case involved the same shutters as those here in issue in addition to shutters with stationary louvers and door-sized shutters 80 inches in height with movable or nonmovable louvers. The trial court concluded from the evidence therein that no single use or class of uses predominated and that all of the shutters were susceptible to and were used in various ways by being adapted through cutting or joining to fit a particular place where use was desired. Four witnesses testified on behalf of the importers and none for the government. On the basis of the record thus made, the trial court found that the merchandise was not chiefly used as window blinds and sustained the importer's claim for classification as manufactures of wood, not specially provided for.

In the case here on appeal, it was agreed at the outset of the trial that shutters 80 inches in height or over, whether with movable or fixed louvers, were not chiefly used as window blinds and were therefore dutiable under paragraph 412 as manufactures of wood. We are concerned here only with merchandise which has been specifically limited by agreement to stock size, interior wooden shutters under 80 inches in length with movable louvers. The record in the *Frazer & Hansen* case is relevant only with respect to the merchandise here under consideration.

The issue here is whether the merchandise was properly classified as window blinds rather than as manufactures of wood, as claimed. In

---

[2] 47 Cust. Ct. 40, C.D. 2277.

other words, is the decision of the Customs Court supported by substantial evidence of record and applicable law?

It is well settled that the collector's classification carries with it a presumption of correctness and that he found the existence of all facts basic to the classification. *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798. Underlying the classification here is the collector's finding that the instant merchandise is chiefly used as window blinds. It is incumbent upon appellants to establish that they were not chiefly so used.

We agree with the Customs Court that resolution of the issue here is controlled by the doctrine of chief use; that the tariff designation for "window blinds" is a designation of use and it is the chief use of the imported article which governs its classification thereunder. "Chief use" in this context means the principal or predominant use. It does not envision exclusive use, but rather contemplates the usual and common use. A fugitive use or mere susceptibility or capability of use are not determinative factors as to such chief use. *United States* v. *Baltimore & Ohio R.R. Co.*, 47 CCPA 1, C.A.D. 719. Chief use is a question of fact to be determined by the relevant facts and circumstances appertaining thereto. *United States* v. *C. S. Emery Co.*, 53 CCPA 1, C.A.D. 868. It is not properly within the competence of this court to reverse the lower court on a question of fact except where the findings are without evidence to support them, or are clearly contrary to the weight of the evidence. *United States* v. *Charles Garcia & Co., Inc.*, 48 CCPA 140, C.A.D. 780; *Carey & Skinner, Inc.* v. *United States*, 42 CCPA 86, C.A.D. 576.

As a threshold matter, we deem it pertinent to note, as did the court below, the alleged distinction sought to be made by appellants between the term "shutter" and the term "blind" in support of the contention that the articles in question are not blinds. In order to be classifiable under paragraph 411, the articles must be embraced by the common meaning of the term "blinds" *and* be chiefly used in windows. In making its determination that the goods came within the common understanding of the term "blinds," the court below resorted to the dictionary meaning of the terms "blind" and "shutter," portions of which are hereinafter set forth:

> Blind, n. * * * a hinged shutter * * *
> Webster's New International Dictionary (1930 ed.)
> Blind, n. * * * a screen or shutter of slats * * *
> Funk & Wagnalls New Standard Dictionary (1930 ed.)
> Shutter, n. * * * a blind * * *
> Webster's New International Dictionary (1930 ed.)
> Shutter, n. * * * A *shutter* is usually solid, while a *blind* is made with slats, movable or fixed.
> Funk & Wagnalls New Standard Dictionary (1930 ed.)

In our view, the conclusion is supported semantically that the articles in question are blinds and come within the *eo nomine* provision of paragraph 411.

We agree with the court below that:

While it appears from the foregoing that the words "shutter" and "blind" are defined in terms which refer to each other, we do not believe that it necessarily follows that all shutters are blinds. It would appear that the only shutters which may be considered to be blinds are those used in connection with window openings. The particular tariff designation under consideration is "window blinds," and this implies that the use of an imported article determines its classification thereunder. In other words, it is a designation by use, and, in such cases, it is well settled that it is the chief use of the article which controls its classification. *Magone* v. *Wiederer*, 159 U.S. 555, 40 L.ed. 258.

We must therefore determine, under applicable law, whether the record before us contains substantial evidence in support of the judgment of the Customs Court. A review of the testimony adduced in behalf of the appellants, as reflected by the incorporated records and the *Frazer & Hansen* case, in the language of the court below "offers nothing toward showing chief use of the present merchandise." We must agree to the extent that it affords very little of probative value in its array against the presumption which obtains in favor of the classification as established by the collector. We have heretofore noted the trial court's analysis of appellants' testimony in the incorporated case. The testimony related to various kinds of shutters, those in issue here and those not in issue. They included shutters with movable and nonmovable louvers, 80 inches in length and various lengths under 80 inches. Various uses were described without specifying the nature of use applicable to a particular type or what percentage was used for a specified purpose. It would be most difficult, if not impossible, to determine from this testimony how or how many of the various types or lengths were used. As noted by the court below, appellants made no attempt to establish chief use of the merchandise. Like the lower court, we are unable to glean from this testimony whether the stock standard size shutters under 80 inches with movable louvers at issue here are chiefly used as window blinds.

In the case here on appeal, appellee introduced 17 witnesses. Their testimony was directed to the specific wooden shutters in issue. It would unduly prolong this opinion to detail their testimony. Suffice it to say that these witnesses included an installer of stock shutters, such as those in issue, who testified that 99 percent were installed in windows; a manufacturer who sells and installs such shutters testified that 96 to 98 percent were installed in windows and that their chief and overwhelming use was dedicated to windows; a sales manager for a shutter manufacturer with installation experience testified that

approximately 90 percent of such shutters were installed in windows as blinds. Running the entire gamut of appellee's witnesses, which includes manufacturers, sellers, distributors (wholesale and retail) and installers of such articles as those in issue, the conclusion is amply supported that wooden shutters such as those in issue are chiefly used in interior window openings, as window blinds, to control air, ventilation and privacy. If support of the oral testimony be needed, and we think not, it may be found to reside in the exhibits such as advertising matter and catalogs. We agree with the court below that collectively the commercial experience of appellee's witnesses embraces the entire United States.

We have considered the testimony in rebuttal and exhibits introduced by appellants and must agree with the Customs Court that this evidence falls far short of serving as a contradiction of appellee's testimony on the matter of chief use.

While the record reflects that the articles in question can be used, and are susceptible of use, for different purposes, such possible use is not a controlling factor as to chief use. As we have heretofore observed, the principal or predominant use is the controlling factor in finding chief use.

Appellants contend that the shutters in issue in their imported condition are merely material which after importation can be and is made into a variety of articles. We, however, agree with the Customs Court that the articles at the time of importation:

* * * had been subjected to every manufacturing process necessary for their completion as window blinds and their chief use as such. None of the work, upon which plaintiffs base their argument, is a manufacturing process. Trimming, planing, or minor cutting * * * to fit them properly in window openings, are corrective details, forming a perfect window blind. Fitting hinges and other items of hardware, only equip the shutters for their chief use as window blinds. Supplying such equipment is not a manufacturing process. Nor is painting or staining * * * for preservation, and to impart an attractive appearance, a manufacturing operation. * * *

Analogous to the above, see *Washington Handle Co.* v. *United States*, 34 CCPA 80, 83 C.A.D. 346; *United States* v. *Schaeffer & Budenburg Corp.*, 18 CCPA 338, T.D. 44587.

In addition to the above, we may well take judicial notice of the fact that window blinds require some means of attachment to the freehold by application of means, such as hinges, to complete installation and insure utility in their intended enviroment. Such in no wise changes their character or impedes their purpose to control air, light and privacy.

For the reasons herein stated, we are of the opinion that the judgment of the Customs Court is supported by substantial evidence and applicable law. That judgment is, therefore, *affirmed.*